UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHORE OFFSHORE SERVICES, LLC                CIVIL ACTION

VERSUS                                       NO. 18-1288

JAB ENERGY SOLUTIONS, LLC                    SECTION A(4)

## ORDER AND REASONS

The following motions are before the Court:

**Motion for Reconsideration (Rec. Doc. 99)** filed by plaintiff Shore Offshore Services, LLC;

**Motion to Seal (Rec. Doc. 100)** filed by plaintiff Shore Offshore Services, LLC;

**Motion to Strike Expert Designations (Rec. Doc. 104)** filed by plaintiff Shore Offshore Services, LLC;

**Motion for Leave to File Opposition (Rec. Doc. 108)** filed by defendant/counterclaimant/third-party plaintiff JAB Energy Solutions II, LLC.

With the exception of the motion to seal, all motions are opposed.

The motions, submitted for consideration on January 23, 2019, are before the Court on the briefs without oral argument.[1]

**I.     Background**

Shore Offshore Services, LLC filed suit against JAB Energy Solutions II, LLC seeking to recover for unpaid invoices totaling $338,814.48 (Rec. Doc. 1, Complaint ¶

---

[1] The motion to seal and motion for leave to file an opposition were not set for submission.

29), and for time and materials costs of $1,074,830.43 that Shore incurred until JAB formally terminated the parties' contractual relationship (Complaint ¶¶ 40-41). Shore is in the business of decommissioning offshore oil and gas platforms in the Gulf of Mexico. Shore has at its disposal large derrick barges with heavy lift cranes that lift component parts of the platform and the platform itself to load those items onto material barges. (Rec. Doc. 71-1, Memo in Support at 2). Shore explains that it contracts to perform this work in two ways: 1) by contracting directly with the oil company that owns or operates a platform to be decommissioned, or 2) by chartering one of its derrick barges to another company which has in turn contracted with the oil company that owns or operates the platform to be decommissioned. (*Id.*). The work that Shore was performing for JAB in this instance is of the second type: JAB had contracted with an offshore platform operator, Black Elk Energy, to decommission certain of its platforms in the Gulf of Mexico in 2017, and required Shore's services, vessel, and equipment to carry out the job.

      According to Shore, the parties' contractual relationship is defined by a July 2017 Master Services Agreement ("MSA") and Work Order, both of which are governed by general maritime law. (Complaint ¶ 6). The MSA and Work Order govern the work made subject of the invoices that JAB has not paid and for which Shore has filed suit. (Rec. Doc. 71-1, Memo in Support at 3). Shore complains that JAB has refused to pay the outstanding invoice amounts based on the contention that Shore breached its contract with JAB thereby obviating JAB's obligation to pay for services rendered. (Rec. Doc. 71-1, Memo in Support at 1). Shore characterizes the "dispute" as centering upon an incident with the DB PACIFIC when decommissioning a platform in the Vermillion 119

block. The incident occurred on October 10, 2017, when the cabling on the DB PACIFIC severed and a 920-ton platform jacket fell into the Gulf. The DB PACIFIC was unable to complete the lift and JAB contracted with another company to complete the job. (Complaint ¶ 23). JAB claims that it cost a significant amount of money to complete the job that Shore failed to do because of its faulty vessel.

Shore contends that neither general maritime law nor the parties' contract supports JAB's position that it can resist payment based on the October 10, 2017 incident or any other alleged breaches, and that judgment as a matter of law should be granted in favor of Shore in the amount of $1,413,645. (*Id.*).

Shore filed a motion for partial summary judgment, and on December 21, 2018, the Court issued its Order and Reasons. (Rec. Doc. 94). The Court denied Shore's motion, which essentially sought an order directing JAB to immediately pay the outstanding invoices notwithstanding the ongoing dispute as to the October 10, 2017 incident. The Court did resolve, however, the parties' dispute over whether maritime law or Texas law would govern the contractual dispute. Adopting Shore's position on the issue, the Court concluded that maritime law would govern. *Id.* at 4.

A jury trial is scheduled to commence on March 18, 2019. (Rec. Doc. 21).

**II. Discussion**

**I.**

Shore now moves the Court to reconsider its denial of the motion for partial summary judgment insofar as the Court declined to order that JAB must pay the outstanding invoices immediately. Shore contends that the Court, in declining to issue such an order, obviously overlooked the terms of the MSA.

The Court did not overlook the terms of the MSA. The Court stated:

> Shore is entitled to be paid at some point for the work that it successfully performed, particularly work that did not involve the October 10, 2017 incident. Summary judgment need not be granted now and the Court declines to do so. This case does not present a scenario where the defendant has embellished a claim for material breach in order to dispute otherwise valid invoices. Regardless of who is ultimately found at fault for the October 10, 2017 incident, it was a significant occurrence (plausibly a costly one) and directly relates to performance under the MSA and Work Order. Even Shore devoted a significant amount of attention to the incident in its complaint and briefing.

(Rec. Doc. 94 at 4-5).

The motion for reconsideration is denied for all of the same reasons that the Court denied the motion for partial summary judgment in the first place. JAB did not invent the October 10, 2017 incident. The Court cannot determine on the briefs who was at fault for the incident and how much of the cost to remediate the incident is attributable to the party at fault. Whether, and to what extent, JAB is embellishing its own damages, is something that the Court cannot ascertain on the briefs.

The related motion to seal is denied as to both Exhibit F (work order between JAB and a non-party) and Exhibit A (email string between Shore representative "Kristi" and JAB's Brent Boudreaux). Neither document contains confidential business information.[2]

---

[2] The Court recognizes that Shore moved to seal the exhibits because JAB marked them as confidential. In Shore's motion to challenge confidential designations (Rec. Doc. 25), which was heard by the magistrate judge, Shore argued that JAB was designating documents as confidential in bulk without regard to whether or not the documents were actually confidential, and intentionally increasing the costs and burden of working with the documents. (*Id.* at 5). As the Court reads the magistrate judge's ruling, she found that only seven of the hundreds of disputed documents were actually appropriately labeled confidential. (*Id.* at 7). This Court experienced some of the burden that Shore was referring to when JAB attempted to file an opposition with over 200 pages of sealed exhibits. (Rec. Doc. 76). The Court ultimately struck the opposition and vacated its prior order allowing JAB to file its exhibits under seal. (Rec. Doc. 84). Regardless of what any party considers confidential and would prefer to shelter from public

## II.

Shore moves the Court to strike Brent Boudreaux as an expert witness.

On December 26, 2018, JAB designated its president, Brent Boudreaux, as an expert witness in a litany of areas too lengthy to recite here. (Rec. Doc. 104-2). December 26, 2018, was the last day for "Defendant" to produce expert reports. (Rec. Doc. 21, Scheduling Order). JAB did not produce an expert report, being persuaded that Boudreaux was exempted from producing a report pursuant to Rule 26(a)(2)(C), and that to the extent that a report was necessary, the 26 page, single-spaced affidavit that Boudreaux submitted in opposition to Shore's motion for partial summary judgment (hundreds of pages of exhibits were attached to Boudreaux's affidavit) should suffice.

Aside from challenging the substance of Boudreaux's affidavit and the suggestion that he was not required to provide a report, Shore argues that the designation was not timely because Boudreaux's opinions only pertain to JAB's counter-claim and third-party demand against MARS[3]—claims for which JAB stands as the plaintiff, not the defendant—and therefore any report would have to have been produced by November 26, 2018—the scheduling order deadline governing production of the plaintiff's experts reports—in order to be timely. (Rec. Doc. 21).

Before proceeding to the merits of Shore's motion to strike Boudreaux, the Court must address JAB's motion to file an opposition out of time, which Shore opposes.

---

scrutiny, it is not incumbent upon the Court to allow it to be filed under seal. In fact, in this circuit the district court's discretion to seal records "is to be exercised charily." *N. Cypress Med. Ctr. Oper. Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) (quoting *Macias v. Aaron Rents, Inc.*, 288 Fed. Appx. 913, 915 (5th Cir. 2008)).

[3] Modern American Recycling Services, Inc. or MARS is a Shore affiliate company.

Shore's motion to strike Boudreaux as an expert was noticed for submission on January 23, 2018, which means that JAB's opposition was due to be filed no later than January 15, 2018. (E.D. La. Local Rule 7.5). On Friday, January 18, 2019, at 5:38 p.m., JAB filed an ex parte/consent motion to file its opposition out of time. (Rec. Doc. 108). Neither the motion nor the memorandum in support mentions or even suggests that the motion was in fact opposed.[4] The opposed motion for leave to file the opposition out of time is not a motion allowed by the Local Rules to be filed ex parte—JAB's counsel obviously understood this which is why Ms. Carollo emailed Shore's counsel to obtain consent—and therefore, JAB's counsel was required to notice it for submission, and to separately move for expedited consideration. (Local Rules 7.2, 7.3).

In its opposition (Rec. Doc. 109) to JAB's motion for leave to file its opposition out of time, Shore characterizes JAB's motion for leave—which unilaterally asserts that Shore would suffer no prejudice from the late filing—as being misleading, and disingenuous given that JAB failed to mention Shore's opposition to the motion.[5]

The Court agrees that JAB's motion to file the out of time opposition demonstrates a lack of candor toward the Court and a lack of professionalism toward

---

[4] That the motion for leave was opposed, and that JAB's counsel knew this when he filed the motion for leave as an ex parte/consent motion, is beyond dispute because Shore has produced the email exchange that occurred on the afternoon of Friday, January 18th, which was the Friday before the Martin Luther King Holiday weekend. (Rec. Doc. 109-1). JAB's counsel emailed Shore's counsel at 4:33 p.m., and without offering the explanation provided to the Court in the motion for leave, asked if Shore would oppose JAB's motion for leave to file its opposition out of time. (*Id.*). Shore's counsel was unequivocal in objecting to the late opposition because its timing would preclude him from filing a reply memorandum before the motion for leave was submitted for consideration.

[5] Shore included with its opposition other instances of conduct by Shore's Houston-based counsel that Shore believes constitutes a pattern of unprofessional conduct. Lead counsel for JAB is not a member of the bar of this district and has been admitted pro hac vice to appear on behalf of JAB in this action. (Rec. Doc. 9).

opposing counsel. This Court typically does not treat harshly lawyers who merely misinterpret the Local Rules in good faith or miss a filing date due to inadvertence, but in this case JAB's counsel knew when he filed the motion for leave that Shore opposed it yet neither his motion nor the memorandum in support disclosed this to the Court. The Clerk's Office therefore did not mark the motion deficient, and it was only when Shore's counsel contacted chambers that the Court knew on Tuesday (1/22/19) morning that the motion was opposed. JAB's counsel also knew when he filed the motion for leave that Shore's counsel would be deprived of the opportunity to file a reply memorandum before the submission date unless he either worked through the holiday weekend or cancelled his travel plans for the Tuesday following the holiday. Shore's counsel could not have been clearer in his email:

> By not filing an Opposition timely by nearly a week and asking us a few minutes before close of business on a Friday if we object to leave to file an untimely Opposition makes reviewing whatever you may file and drafting a Reply Memorandum before the submission date unfair and jams us. Monday is a federal holiday and I'm out of state all day Tuesday, making it impractical for us to be in a position to file a Reply Memorandum given this untimeliness. Shore and MARS object.

(Rec. Doc. 109-1 at 1).

Yet remarkably JAB states in its memorandum in support:

> Additionally, ***neither Shore nor MARS are prejudiced by the filing of JAB's response.*** The Motion to Strike has not been taken under advisement by this Court as of the filing of the Motion for Leave, and JAB's [sic] has meritorious [sic] defense to Shore's motion, which JAB believes should be considered by this Court in determination of the Motion to Strike.

(Rec. Doc. 108-1 at 2) (emphasis added).

If the Court were to grant the motion for leave, then in order to alleviate the prejudice to Shore, the Court would have to disrupt its own motion calendar, which the

Court is not inclined to do under the circumstances. The Court is likewise not inclined to reward JBS's counsel's conduct by accepting the late opposition. JAB's motion for leave to file its opposition out of time is denied.

Shore's motion to strike Boudreaux as an expert witness is granted. Boudreaux, who is a corporate principal of a party, may or may not have testimony to give as a fact-witness but he will not testify as an expert. When the Court declined to strike Boudreaux's 26 page, single-spaced affidavit submitted in conjunction with the motion for partial summary judgment, the Court acknowledged that it is replete with legal argument and legal analysis, and therefore was more akin to a legal memorandum than an affidavit from a witness. (Rec. Doc. 94 at 5). That "affidavit" could never serve as an expert report, and the suggestion that Boudreaux is an expert as to all the matters included in his affidavit is preposterous. In fact, even after reading JAB's expert designation for Boudreaux the Court remains unclear on exactly what Boudreaux's area of expertise might be aside from being an advocate for his company.

Shore has also moved to strike as experts JAB's local counsel with the Lugenbuhl firm who have designated themselves as experts, as well as JAB's lead counsel from Texas. The motion is granted insofar as these attorneys seek to offer expert testimony regarding the attorney's fees incurred in this case. As counsel of record who worked on the case, naturally they will be able to provide support for an attorney's fee motion should their client prevail and should the pertinent contract entitle JAB to attorney's fees.[6]

---

[6] The attorney fee issue is typically not tried during trial but rather is handled via a post verdict motion that the Court decides. Regardless of how the parties elect to "try" the attorney fee issue, enrolled counsel will not be allowed to take the stand and testify before the jury.

Accordingly, and for the foregoing reasons;

IT IS ORDERED that the **Motion for Reconsideration (Rec. Doc. 99)** filed by plaintiff Shore Offshore Services, LLC is **DENIED**;

IT IS FURTHER ORDERED that the **Motion to Seal (Rec. Doc. 100)** filed by plaintiff Shore Offshore Services, LLC is **DENIED**;

IT IS FURTHER ORDERED that the **Motion for Leave to File Opposition (Rec. Doc. 108)** filed by defendant/counterclaimant/third-party plaintiff JAB Energy Solutions II, LLC is **DENIED**;

IT IS FURTHER ORDERED that the **Motion to Strike Expert Designations (Rec. Doc. 104)** filed by plaintiff Shore Offshore Services, LLC is **GRANTED** as explained above.

January 29, 2019

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE